OPINION OF THE COURT
Helen E. Freedman, J.
Petitioner, Equity Properties Corp., seeks to terminate a subtenancy on the ground that the prime tenant did not receive prior consent to sublet from the landlord. Respondent Bonhomme had been a tenant of Apartment No. 6 at 287 West 4th Street since October, 1972. She remained in possession of the premises, as a rent-stabilized tenant pursuant to a series of three-year leases. The most recent of the leases, which commenced on October 1, 1978, contains a rider, negotiated by the parties, specifically granting the tenant the right to sublet subject to certain rules. The rider, paragraph 33, states: “The landlord covenants that the tenant shall have the right to sublet the premises with the prior permission and consent of the landlord, not to be unreasonably withheld, provided the tenant shall give at least ten days prior written notice by certified mail, return receipt requested, setting forth the name, age, address and place of employment and occupation of the proposed subtenants) and the number of persons to occupy the premises in connection with the subtenancy. Landlord shall have ten days from the time of the receipt of said notice to reply *761 thereto and in the event landlord for any reason does not consent to the subletting the landlord must set forth the specific reasons why no consent is being given to the proposed subletting. In the event landlord shall fail to reply within ten days after receipt of said notice, then in such event, landlord shall be deemed to have waived its rights to object thereto. Landlord’s reply shall also be given by certified mail, return receipt requested. In computing the ten day period for the giving proposed notice and the reply thereto, weekends, Saturdays and Sundays and holidays shall be exclude#; if a weekend day falls. A. On the first day following the sending of the notice by the tenant to the landlord and if the last day for the landlord to reply thereto is either a Saturday, Sunday or a legal holiday, then the landlord’s time shall be extended to the first weekday or the first day following the legal holiday.” In addition, the lease contains standard form paragraph 16, which incorporates by reference section 226-b of the Real Property Law.
On February 2, 1981, respondent Bonhomme wrote a letter to the landlord in which she requested permission to sublet the premises. Pursuant to paragraph 33 of the lease, respondent set forth the names, ages, address, and occupations of each of the proposed subtenants and sent the letter by certified mail. Instead of responding affirmatively or negatively, petitioner sent a letter dated February 4,1981, seeking additional information about the subtenants, the prime tenant and the arrangement between them. Respondent Bonhomme answered the letter, furnishing the information sought, but petitioner’s office erroneously rejected the letter and it was returned to respondent Bonhomme. Petitioner never actually rejected the proposed subtenants and respondents Rincon took occupancy.
In bringing this action to evict respondents, petitioner claims a breach of a substantial obligation of the tenancy. The main thrust of petitioner’s argument is that respondents did not follow the timetable set forth in paragraph 33, making it impossible for the landlord to evaluate the subtenants and determine whether to accept or reject them. Petitioner alleges that Susan Bonhomme moved out of the apartment toward the latter part of January, 1981, *762 but did not request permission to sublet until February 2, 1981. There is some evidence that respondent Bonhomme did leave the premises prior to February 2, 1981, and that the Rincons moved in toward the beginning of February. The gas and electricity account was turned off in the name of Bonhomme and opened in the name of Rincon on February 2,1981. However, the gas and electricity account in the Rincon’s prior apartment was not turned off until February 11, 1981. The Rincon’s presence in the apartment was not actually discovered by petitioner until March 2, 1981, although the first letter from Bonhomme requesting permission to sublet had clearly arrived by February 4, 1981.
The two lease provisions which govern subletting must be considered in order to determine whether, under these facts, a material breach occurred. They are paragraph 16 and paragraph 33. Although the terms of paragraph 33, the rider, are substantially the same as those of section 226-b of the Real Property Law, I note two differences: the rider applies only to subletting whereas section 226-b applies to subletting and assignment; the rider provides that the landlord must consent to or reject the subtenant within 10 days, whereas section 226-b allows the landlord to ask for additional information within 10 days. Landlord here, by asking for the additional information, seems to have chosen to follow section 226-b (par 16) rather than to rely on the rider. Certainly the landlord cannot be heard to argue that the prime tenant breached paragraph 33 by failing to give 10-days notice, when the landlord itself failed to follow the lease provision. Moreover, Ms. Bonhomme did comply with the request for additional information and through no fault of her own the landlord rejected her certified mail response.
The question confronting me is whether under all of these circumstances Bonhomme had the right to proceed with the sublease arrangement, even though she had not received the express consent of the landlord. In the recent case of Conrad v Third Sutton Realty Co. (81 AD2d 50) the Appellate Division, First Department, found that where the landlord withholds consent unreasonably the tenant has two remedies under section 226-b of the Real Property Law. One is “the option, in the tenant, to surrender the *763 lease under subdivision 1, and the other being the remedy of compelling the landlord to accept the bona fide sublease under subdivision 2.” (Conrad v Third Sutton Realty Co., 81 AD2d 50, 56-57, supra.) In light of this holding, petitioner’s argument that respondent’s failure to follow a particular timetable deprived it of the opportunity to reject the subtenants must fail. Even had the landlord timely rejected the subtenant, such rejection would not have been reasonable inasmuch as even now, no reason has been set forth which would support rejection of the subtenants in question. In fact, counsel for the landlord, himself a shareholder in petitioner, stated in open court that the subtenants appeared to be satisfactory and that it was principle he was interested in pursuing.
Petitioner also argues that the sublease in question is actually an assignment as a matter of law because Bonhomme sublet the apartment for the balance of her lease term. (Herzig v Blumenkrohn, 122 App Div 756.) While it is true that the rider only covers sublets, paragraph 16, the provision which brings section 226-b of the Real Property Law into play, applies to both subletting and assignments. Although the Appellate Division in Conrad did not expressly deal with assignments, the language of section 226-b at all times refers to subleases in conjunction with assignments.
At common law, tenants had an unrestricted right to sublet and assign (Rasch, New York Landlord and Tenant, Summary Proceedings [2d ed], § 249; see, also, Conrad v Third Sutton Realty Co., 81 AD2d 50, supra). Covenants restricting the right to assign were not favored and were strictly construed (Rasch, New York Landlord and Tenant, Summary Proceedings [2d ed], §§ 253, 265). In recent years standard form residential leases have severely limited the rights of tenants to sublet and assign, and landlords, eager for statutory rent increases, have refused to consent to either sublets or assignments. The Legislature, in order to increase the bargaining power of tenants and to ameliorate the effects of the severe housing shortage, partially restored tenants’ common-law rights by imposing a sublet and assignment procedure that both parties were mandated to follow. It made no distinction between sublets and *764 assignments. Therefore, the analysis and interpretation of section 226-b of the Real Property Law set forth in Conrad must apply to assignments as well as to subleases.
Under the particular facts of this case, no reason has been offered which constitutes a reasonable basis for rejecting the Rincons as assignees as opposed to subtenants. I note that the Rincons are willing to pay any increase to which petitioner is entitled under the Rent Stabilization Law, including the vacancy increase. Therefore, I find the assignment to be valid.
Petition is hereby dismissed and tenant Rincon is directed to tender and petitioner is directed to accept rent.